## IRM, Inc., Trad. as Spring Mountain House v. Smith

*Lawrence Goldberg*, for plaintiff.

*Charles S. Solit*, for defendant.

TREDINNICK, J., July 24, 1972.—Plaintiff in this case seeks an order of this court enjoining defendant Secretary of Labor and Industry from "interfering, impeding or closing the premises of the Plaintiff, pending (1) completion of the full administrative and legal appeal procedures from the Orders, notices and

determinations of the Defendant," and pending "the submission of the plans and specifications by Plaintiffs's architect, if necessary, and the completion of the full administrative and legal appeal procedures that may accrue from such submission, if any."

Implicit in plaintiff's request for relief is his recognition that, ordinarily, equity is not available for general relief where administrative decisions and appeal procedures therefrom provide an adequate remedy at law. In essence, plaintiff invokes the jurisdiction of this court on the basis that while he has, ultimately, the opportunity for a legal remedy, he claims that he will be irreparably harmed by the administrative action of the Secretary of Labor and Industry before he may achieve relief at law.

The narrow issue before this court is, therefore, whether pending pursuit of his legal remedies, the action of the Secretary of Labor and Industry should be stayed.

We conclude that such should be the case only if the secretary has flagrantly abused his discretion, or acted contrary to law.

The Fire and Panic Law of this Commonwealth, Act of April 27, 1927, P. L. 465, 35 PS §1221, et seq., imposes upon defendant as Secretary of Labor and Industry, the power and the duty to make rules and regulations governing the construction and equipment of various classes of buildings enumerated in that act. It further provides that "Whenever any building designated in (the) act shall, in the opinion of the Department of Labor and Industry, becomes dangerous to further occupancy because of structural or other defects, it shall immediately be closed to further occupancy."

The Department of Labor and Industry has, of

course, promulgated such regulations. The latest edition of the regulations, the 1971 edition, has been submitted to the court.

While it is not the function nor duty of this court to determine definitively which of the voluminous regulations apply to plaintiff's use of the Spring Mountain House premises, reference to these regulations is necessary to determine whether the secretary has acted arbitrarily or contrary to law.

It is immediately apparent when confronting the regulations that it is necessary to determine which occupancy classification governs the present use of plaintiff's property, and what structural classification it falls within. Only when these two determinations are made can one ascertain what specific regulations apply. Plaintiff contends he operates a hotel. The secretary maintains the use is the equivalent of a nursing home. We turn to the regulations.

Section 301 contains definitions. The phrase "Boarding Home for The Aged" is defined therein as "any building operated for the express or implied purpose of providing service or domiciliary care for three or more elderly people who are not ill or in need of nursing care and in which there is no agreement that such service shall include personal care or special attention."

On the basis of the evidence presented, and also on the basis of the court's visit to the premises on Friday, July 21, 1972, the premises falls, at least, within that definition.

Section 702 defines group C-1 occupancies to include "group habitation where the occupants are under restraint, or are physically or mentally handicapped, or are partially or completely disabled. Hospitals, sanitoriums, nursing, convalescent or rest

homes, *boarding homes for the aged,* orphanages, jails, reformatories, houses of correction and the like shall be in this classification."

While the initial sentence of that section refers to occupants under restraint, or physically or mentally handicapped, or partially or completely disabled, and plaintiff contends that none of his guests fall within any of those categories, we consider the fact that the regulations specifically include "boarding homes for the aged" to be an administrative determination that, in fact, where three or more elderly persons are housed, the occupants are to some extent, physically or mentally handicapped, or partially or completely disabled.

Such a determination is not, in the opinion of the court, without reason. It takes no imagination at all to envision that a group of elderly persons will be substantially less able to extricate themselves from a building on fire than a similar number of, let us say, middle age people. The ravages of time create infirmities, unfortunately, at the very least, a loss of agility and stamina, two very important factors involved in fleeing danger.

Therefore, we conclude, for purposes of this case, that the use involved here, is classified as C-1, under Group Habitation Occupancy.

A second classification the regulations employ is by type of structure. It is clear that Spring Mountain House is basically a "Wood Frame" structure, or a type 6 classification. It is the last and least desirable type of structure insofar as fire safety is concerned in a classification system which starts out with category one, "fireproof."

To repeat, we have thus concluded that for present purposes, we consider the occupancy classification to be C-1, and the structure as Type 6. Specific regulations applying to a structure within those cate-

gories are numerous, and the court has not attempted to analyze these many regulations. Suffice it to say that as the court reads them, both the second and third floors are prohibited from occupancy as presently constructed and used. And several of the specific defects which the secretary cited to plaintiff are, in fact, violations of the regulations totally apart from the special regulations set forth in chapter 34 thereof. That chapter deals with nursing homes. As an aside, the definition of a nursing home in that chapter specifically includes "Homes for the aged." We do not decide whether or not the inclusion of a "home for the aged" or a "Boarding Home for the Elderly" should, or should not, fall within the classification of a "Nursing Home," as that determination is not necessary in order to reach a decision in the case.

Basically, we hold that the secretary has neither abused his discretion in ordering Spring Mountain House to discontinue operations, nor has he acted contrary to law.

The court has been faced with a difficult decision involving plaintiff's financial well being and the comfort and emotional well being of the guests at his establishment, on the one hand, and the very lives of those guests on the other. We recognize that the guests appear to be happy and well cared for there, but in our judgment, the secretary was acting reasonably and within the law in determining that the very protection of their lives dictated his decision.

We enter the following

ORDER

And now, July 24, 1972, the injunction entered preliminarily by this court on July 19, 1972, is dissolved.